IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WILLIAM B. BROWN,<br>    *Plaintiff*,<br><br> v.<br><br>AVRIL HAINES,<br>    *Defendant*. | Case No.: 1:23-cv-00221 (MSN/IDD) |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss, Or, in the Alternative for Summary Judgment (ECF 19-20). Upon consideration of the pleadings and for the reasons set forth below, the Court will **GRANT** the Motion to Dismiss with respect to all of Plaintiff's claims.

### I. PROCEDURAL HISTORY

Plaintiff William Brown filed a complaint *pro se* against Avril Haines, in her official capacity as Director of National Intelligence ("Defendant") on March 22, 2023, alleging that the Office of the Director of National Intelligence ("ODNI") rescinded his conditional offer of employment as National Intelligence Officer of Economics based upon unlawful age discrimination. On May 25, 2023, Defendant moved to dismiss the complaint for failure to state a claim, or, in the alternative, for entry of summary judgment. Mot. to Dismiss and for Summ. J. (ECF 19-20) ("Mot." or "Motion"); Mem. in Supp. of Def. Mot. to Dismiss and for Summ. J. (ECF 21) ("Def. Mem"). Brown filed a response on June 8, 2023 (ECF 25) ("Opp." or "Opposition"), and Defendant filed a reply on June 27, 2023, (ECF 30) ("Reply"). Brown filed an additional opposition brief titled "Comments on Defendant's Reply of June 27" on July 03, 2023 (ECF 34)

1

without leave of Court.[1] The Court is satisfied that oral argument would not aid in the decisional process. Accordingly, this matter is ripe for resolution.

## II. BACKGROUND[2]

On July 8, 2019, the ODNI extended Plaintiff Brown a conditional offer of employment ("COE") for a Staff Reserve,[3] Senior National Intelligence Service time-limited appointment for the position of National Intelligence Officer for Economic Issues. Compl.; ECF 5-12 at 4. Approximately one year later, in August 2020, while still undergoing security clearance processing, ODNI informed Brown, via letter, that his COE was being rescinded "due to change in mission requirements," but that he was "eligible to reapply to other opportunities with the ODNI without restrictions." *Id.*; ECF 5-12 at 5-6. Brown alleges that ODNI discriminated against him on the basis of age when it rescinded his COE. At the time of the COE rescission, Brown was 69 years old. *Id.* at 5.

On October 2, 2020, Brown filed a formal complaint of discrimination with ODNI's Equal Employment Opportunity ("EEO") office alleging discrimination on the basis of age. Def. Mem.;

---

[1] Local Rule 7(F)(1) provides that other than a motion's opening brief in support, the opposing party's responsive brief, and the movant's reply brief, "[n]o further briefs or written communications may be filed without first obtaining leave of Court." Allowing a surreply is within the court's discretion. *See*, e.g., *United States ex. Rel. Carter v. Halliburton Co.*, 2011 WL 6178878, at *12 (E.D. Va. Dec. 12, 2011) (*rev'd on other grounds*). An "opposing party may not submit a surreply simply because the movant used their reply brief to further support an argument made in their opening brief or to respond to new arguments in the opposing party's opposition." *Adams v. Applied Bus. Servs.*, 2019 WL 7817080, at *1 (E.D. Va. Aug. 30, 2019) (cleaned up). Plaintiff did not obtain leave of Court to file his surreply. Accordingly, the Court will not consider it.

[2] The Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor for purposes of this motion. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). Moreover, the facts in this section are largely drawn from the Report of Investigations ("ROI"), portions of which Brown has attached to his complaint. When a document attached to the pleadings contradicts the allegations in the complaint, the document typically controls in a Rule 12(b)(6) motion. *Moorehead v. Keller*; 845 F. Supp. 2d 689, 693 n. 1 (W.D.N.C. 2012). "In ruling on a motion to dismiss, a court 'may consider documents attached to the complaint.'" *Fountain Enterprises, LLC v. Markel Ins. Co.*, 568 F. Supp. 3d 613, 617 n.2 (E.D. Va. 2021) (quoting *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019)).

[3] "Staff Reserve is a time-limited appointment of 3 years, with a possible renewal of 2 year(s) (in one-year increments) not to exceed a cumulative total of five years of service consistent with ODNI Instruction 77.11." Compl.; ECF 5-12 at 4.

Ex. 1 at 2.[4] On June 6, 2022, after administrative proceedings and appeals, the Equal Employment Opportunity Commission ("EEOC") affirmed ODNI's "final decision finding no discrimination." *Id.*; Ex. 2 at 3. Brown requested the EEOC to reconsider its appellate decision and on November 21, 2022, the EEOC affirmed its original decision. Compl.; ECF 5-12 at 2. The EEOC issued a Notice of Right to Sue letter on November 26, 2022, and this civil action followed. *Id.* at 5.

### A. Brown's COE & ODNI's Decision to Rescind the COE

Brown's COE letter stated that it was "contingent upon [his] successful completion of all pre-employment screening" and was "subject to the availability of funds." Compl.; ECF 5-12 at 4. The letter further stated that a "Staff Reserve appointment may be terminated at any time and for any reason by the Director of National Intelligence;" that the COE could "be rescinded at any time prior to [his] EOD[5]" and that Brown "should not take any actions based on this conditional offer." *Id.*

Around April or May 2020, ODNI leadership required the Directorate for Mission Integration ("DMI") to do a grade structure review of all positions out of concern about DMI grade inflation. Def. Mem.; Ex. 6 at 7. At the time, all of the National Intelligence Officer ("NIO") positions were Senior National Intelligence Service ("SNIS") Tier II positions and as a result of the review, DMI reduced the senior structure by twenty-five positions and also converted a majority of the SNIS

---

[4] Given that Brown references, but does not include the agency's entire ROI, which is apparently "800 plus pages" Compl. at 5, the Court deems it appropriate to consider the excerpts of the ROI provided by both Brown and Defendant in the form of exhibits. "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment. This ruling encompasses not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims. There is only one limitation: the document must be one of unquestioned authenticity." *McKenney's, Inc. v. Leebcor Servs.*, LLC, 2021 WL 2389810, at *2 (E.D. Va. May 12, 2021) (quoting *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)). Neither party challenges the authenticity of the excerpts of the ROI in this matter.

[5] The Court takes judicial notice of the fact that EOD stands for "Entry on Duty," which is defined by the U.S. government's civil service job employment website as the "process by which a person completes the necessary paperwork and is sworn in as an employee." https://www.usajobs.gov/Help/glossary/.

Tier II positions to Tier I,[6] which included the NIO position initially offered to Brown. *Id.*; Ex. 6 at 6-10. When Brown was offered his position in 2019, it was a Staff Reserve position for three years that could be extended for a total of five years; however, Staff Reserve appointments were subsequently changed to one year plus a possible extension of one more year based on a need for ODNI to comply with Office of Personnel Management ("OPM") guidance. *Id.*; Ex. 5 at 6-7; Ex. 6 at 17-19; Ex. 9 at 2-7. Furthermore, at ODNI, if a position changes "significantly" or there is a mission change, the guidance is to rescind a job offer. *Id.*; Ex. 5 at 11-12; Ex. 6 at 12-13.

In Brown's case, his offer was rescinded because he would not be "stepping into the same job that he was offered." *Id.*; Ex. 6 at 13. Todd P,[7] the Executive Director of DMI, recommended rescinding Brown's COE based on the advice from Human Resource Management ("HRM") given the re-scoping of the position Brown was originally offered. *Id.*; Ex. 6 at 12-13. On August 7, 2020, ODNI sent Brown a letter rescinding his COE. Compl.; ECF 5-12 at 5. The letter stated that "due to change in mission requirements [ODNI] can no longer continue [his] processing and hereby rescinds [its] conditional offer of employment." *Id.* At the time Brown's COE was rescinded, he was 69 years old. *Id.* at 5. Management officials who decided and executed the rescission of Brown's COE deny being aware of his age. Def. Mem.; Ex. 5 at 5; Ex. 6 at 5; Ex. 12 at 5.

It is also worth noting that per the ODNI's HRM Chief, approximately forty Staff Reserve COEs were issued between January 2018 and January 2021 and of that number, three COEs were rescinded, including Emily C's, who was under forty years old at the time the rescission of her job

---

[6] Although the position tiers are not discussed by either party in any detail, it can be inferred that converting a Tier II position to a Tier I one is considered a downgrade in the position.
[7] Consistent with 50 U.S.C. §3507, the ODNI may protect, among other things, the names and identifying information of ODNI personnel. Last names have therefore been abbreviated to first initials, which follows the procedure used in the ROI.

4

offer occurred. *Id*.; Ex. 15 at 2-5. The COE rescissions took place between July 2020 and October 2020. *Id*.; Ex. 15 at 5. And just like Brown's rescission letter, Emily C's letter cited "changes in mission requirements" as the reason for rescinding her COE. *Id*.; Ex. 16 at 9.

### B. Brown's EEO Proceedings

In a letter dated September 1, 2020, addressed to the Chief Equal Employment Opportunity, Brown acknowledged that "the DNI ha[d] a right to suspend this offer and [he] ha[d] no proof that age or other discrimination played a role." *Id*.; Ex. 17 at 6. Brown was interviewed by an EEO investigator under oath on January 21, 2021. *Id*.; Ex. 3 at 1-4. In his interview, when Brown was asked why he believed that his COE had been rescinded because of his age, he responded, "by a matter of elimination." *Id*.; Ex. 3 at 8. When asked by the investigator to provide a reason supporting his allegation of age discrimination, Brown responded, "[y]eah – no, it's fundamentally an issue of I can't think of any other issue. Mainly because . . . I don't know who made the decision." *Id*.; Ex. 3 at 9.

### C. Brown's Discrimination Claim

On September 22, 2020, Brown requested pre-complaint EEO counseling. *Id*.; Ex. 17 at 2. In his EEO documentation, Brown made three concrete allegations – 1) that "the ODNI discriminated against [him], probably by age, by revoking a contingent employment offer for the position of National Intelligence Officer of Economic issues," 2) that "ODNI willfully stopped [his] 14-month long security clearance activation procedure prior to speaking to [him] about their decision to revoke [his] employment offer, after [he] had passed [his] medical and psychological tests," and 3) that "ODNI did not do its due diligence to correct a mistake in 2015 that unfairly lengthened the time of clearance review." *Id*.; Ex. 17 at 13-14. On September 29, 2020, ODNI's EEO office issued a letter advising Brown of his right to file a formal complaint of discrimination. *Id*.; Ex. 18.

5

On October 2, 2020, Brown filed a formal complaint asserting a claim of age discrimination regarding ODNI's decision "to terminate processing of a contingent offer of employment (COE) given to [him] in May 2019." Compl.; ECF 5-12 at 7. In an attachment to his ODNI formal complaint of discrimination, Brown refers to "two other complaints that are derivative from this ODNI action that also suggest the possibility of age discrimination" and that "both relate to a mistake made" in 2015 that allegedly caused the termination of a contract with him as well as a lapse in his security clearances. *Id*.

Following Brown's formal complaint, ODNI conducted an investigation pursuant to 29 C.F.R. § 1614 and issued a final agency decision ("FAD") on July 16, 2021, finding that Brown had "failed to adduce evidence to demonstrate that he was subjected to discrimination on the basis of age with regard to his allegation." Def. Mem.; Ex. 19 at 16. Brown then appealed the FAD to the EEOC's Office of Federal Operations, which issued a decision affirming the FAD on June 16, 2022. *Id*.; Ex. 2. Brown proceeded to move for reconsideration of that decision, which the EEOC denied on November 21, 2022. Compl.; ECF 5-12 at 1-3. In the EEOC denial letter, Brown was advised that he had ninety calendar days from the date of receipt to file a civil action in an appropriate district court. *Id*.; ECF 5-12 at 2. Brown further alleges that he was not selected for three additional positions – (1) Vice Chair of the National Intelligence Council "listed at the same Tier 2 grade level as the NIO [for] Economics" in mid-summer of 2022, (2) a National Intelligence Council Association position on North Korea in December 2021 because "funding for that small project had [] ended," and (3) a professor position at "ODNI's University" in November 2020. *Id*. at 21. Brown has not submitted an independent complaint or notice of intent to sue involving any of these three positions to the ODNI's EEO Office or to the EEOC's Office of Federal Operations.

Def. Mem.; Ex. 21 at 2-3. Brown has also not contacted an ODNI EEO counselor to initiate the informal counseling process with respect to any these three positions. *Id.*

### III. LEGAL STANDARD

Courts may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Nevertheless, a plaintiff must make more than bald accusations or mere speculation; "naked assertions devoid of further factual enhancement," and "a formulaic recitation of the elements of a cause of action" are insufficient under Rule 12(b)(6). *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). A complaint by a *pro se* plaintiff should be liberally construed. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). But the Court's "task is not to discern the unexpressed intent of the plaintiff." *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

### IV. ANALYSIS

Brown's complaint contains three counts alleging – (1) discrimination against him on the basis of age when it rescinded his COE to serve as the NIO for Economics on August 7, 2020; (2) EEO's failure to adequately process his administrative complaint; and (3) retaliation in connection with

7

three positions that he was not selected for between November 2020 and "mid-summer" of 2022. Compl. at 10-22.

### A. Discrimination Claim based on Age

Brown alleges that ODNI discriminated against him on the basis of age when his COE was rescinded. *Id*. at 10. Brown claims that in doing so, the ODNI "broke its own rules and those of Congress and allowed an unauthorized person or persons to rescind [his] offer, letting the position be subsumed non-competitively by a younger and less qualified person." *Id*. Brown further alleges that ODNI has failed "to show valid reasons" for his COE rescission. *Id*. at 18.

Where a plaintiff does not allege direct evidence[8] of discrimination, as is the case here, plaintiff is required to allege a plausible claim of age discrimination with reference to the elements of a *prima facie* case of discrimination. And while Brown need not establish a *prima facie* case for his age discrimination claim at the motion to dismiss stage, his "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 544). Accordingly, courts cannot require a plaintiff's allegations to constitute a *prima facie* case, but they "may look to the requirements of a prima facie case as a guide in assessing the plausibility of plaintiff's claim for relief." *Craft v. Fairfax Cnty.*, 2016 WL 1643433, at *4 (E.D. Va. Apr. 26, 2016).

The elements of a *prima facie* case of age discrimination under the Age Discrimination in Employment Act ("ADEA") are: "the plaintiff is (1) over the age of 40, and (2) experienced discrimination by an employer (3) because of his age." *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020). Inherent to the second element is that preferential treatment on the basis of age

---

[8] "Direct evidence encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested employment decision." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (internal quotation marks omitted).

tainted a "personnel action" or the processes that culminated in that personnel action. *See* 29 U.S.C. § 633a(a); *Babb v. Wilkie*, 589 U.S. 399, 399 (2020) (explaining that although the ADEA does not define the term "personnel action," 5 U.S.C. § 2302(a)(2)(A), defines it to include most employment-related decisions and that age discrimination exists if "age was a but-for cause of differential treatment in an employment decision"). "A plaintiff bringing a discrimination claim under the ADEA must prove that age was not merely a motivating factor of the challenged adverse employment action but was in fact its "but-for" cause." *Motley v. Virginia*, 2018 WL 1472491, at *4 (E.D. Va. Mar. 26, 2018), *aff'd*, 741 F. App'x 171 (4th Cir. 2018).

Brown's complaint lacks any non-conclusory allegations that push his claim "across the line from conceivable to plausible," which is required for his claim to survive dismissal. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 587 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570). Brown has failed to put forth any allegations that plausibly suggest that his COE rescission had any connection to his age. Brown also does not allege that anyone "made any derogatory comments about" his age. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). As evidence of unlawful age discrimination, Brown offers the conclusory allegation that "[t]he most direct cause currently points to age discrimination, the desire to have a younger officer fill this position and the agency has failed to show otherwise," Compl. at 18, which is the type of "naked assertion[] devoid of further factual enhancement" that this Court has held is "not entitled to the presumption of truth" at the motion to dismiss stage. *Guillen v. Esper*, 2020 WL 3965007, at *8 (E.D. Va. July 13, 2020) (quoting *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017)).

Brown further alleges that his COE rescission "open[ed] the door for a named younger less qualified person to take [his] position and rescope it in a way that suited her to [his] detriment."

9

Compl. at 5. But just because a younger person is offered a position that was previously offered to and subsequently rescinded from Brown does not mean that the rescission was discriminatory in nature. *See, e.g., Amis v. Pekoske*, 2021 WL 783543, at *4 (W.D.N.C. Mar. 1, 2021), *aff'd*, 2022 WL 1090252 (4th Cir. Apr. 12, 2022) (the fact that someone younger was selected for a position over the plaintiff "is simply not sufficient, without more, to state a plausible claim for relief under the ADEA"). Brown fails to allege any supporting facts to make his claim of age discrimination plausible. Notably, Brown does not provide the age of the alleged "younger" woman. He simply asserts that she is "about 40 years old." Compl. at 12. But his alleged replacement must be under 40 years old, otherwise she belongs in the same protected class as Brown under the ADEA. *See Meyer v. McDonald*, 241 F. Supp. 3d 379, 391 (E.D.N.Y. 2017), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018) ("An inference against discrimination is appropriate when the individual hired to replace plaintiff alleging discrimination is within the same protected class as plaintiff.").

In fact, Brown pleads a non-discriminatory basis that supports ODNI's decision to rescind his COE, which further undermines any inference that this decision was prompted by any unlawful discriminatory animus. *See Bing v. Brivo Systems, LLC*, 959 F.3d 605, 618 (4th Cir. 2020) ("[Plaintiff]'s complaint fails not because of unsophisticated language . . . [i]t fails because he pled a non-discriminatory basis.) (affirming dismissal of discrimination claim). In fact, Brown acknowledges that this "younger" woman was not offered the same job that he had been offered, as the position had been "rescoped." Compl. at 5. Furthermore, Brown claims that the exact role that he was offered – "the NIO for Economics position" – was "vacant with no new published position description . . ." approximately "two and a half years later." *Id*. at 12 & ECF 5-12 at 17. Brown further alleges that the Chief Operating Officer ("COO"), identified as Travis B., told him

10

that his position had been cancelled "due to a reorganization" and that "the focus of th[e] job was being changed from Asia or China economics to global economics" which is why "Mission Integration decided to rescind and recompete the offer," which are plausible explanations. Compl. at 14. As the Fourth Circuit has held, these are the types of "entirely non-discriminatory reason[s]" for a challenged action that undermine inference of discriminatory animus. *Ali v. BC Architects Engineers, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020). Here, the inference Brown urges the Court to accept would require it to improperly "disregard the reason given to [Plaintiff]" and "speculate to fill in the gaps as to [Defendant]'s motivation" for the action. *Bing*, 959 F.3d at 618 (cleaned up).

The only challenge to the COE rescission that Brown attempts to tether to his age is the fact that he was offered a "Staff Reserve" position, which he claims is a category comprised of "an older class of persons" and that this category of positions became less appealing to hiring managers because its tenure length was reduced from three years to one year. Compl. at 13-14. Brown attaches the official ODNI definition of "Staff Reserve" to his complaint, but no reference to age can be found therein. Compl.; ECF 5-10. Brown acknowledges that his COE rescission was due in part to the shortening of the term limits for "Staff Reserve" positions from three years to one year, *Id*. at 13. Indeed, Brown asserts that "given a one-year limit, [he] would not have bothered with the process." *Id*. at 17.

The shortening of term limits for "Staff Reserve" positions does not create a reasonable inference that Brown was treated differently because of his age, but rather it reflects a fundamental change to the position as it was originally advertised. Even construed in the light most favorable to Brown, his complaint is devoid of facts from which the Court can infer his COE rescission was

11

plausibly the result of discrimination on the basis of age. Accordingly, the Court dismisses **Count I**.

### B. EEO's Failure to Adequately Process Brown's Administrative Complaint

Next, Brown alleges that "the agency's EEO failed to provide an honest and unbiased Final Agency Determination (FAD)" and that "the federal EEOC failed to find results that were well hidden in the rich but poorly organized Report of Investigation" and urges that "the investigation be repeated" Compl. at 6, 19. Brown further criticizes the FAD by stating that "it ignored a large set of highly relevant internal emails that were included in the last half of the 800-page plus ROI" and that the "discourse provided in the FAD and in the ROI summary, are highly biased, selectively using testimony that support the agency position." *Id*. at 19.

First, claims regarding the handling of an administrative investigation are not cognizable under the employment discrimination statutes. Federal anti-discrimination statutes such as the ADEA or Title VII, do not create a cause of action based on allegations that a federal agency has improperly processed administrative complaints of workplace discrimination. *See, e.g., Webster v. Esper*, 2020 WL 974415, at *5 (E.D. Va. Feb. 28, 2020) (noting that "Title VII does not provide a cause of action for the alleged mishandling of an employee's discrimination complaint"); *Young v. Sullivan*, 733 F. Supp. 131, 132 (D.D.C. 1990) (holding that "Title VII creates only a cause of action for discrimination. It does not create an independent cause of action for the mishandling of an employee's discrimination complaints"), *aff'd*, 946 F.2d 1568 (D.C. Cir. 1991); *see also Stoyanov v. Mabus*, 2011 WL 4397492, at *13 (D. Md. Sept. 20, 2011) ("[H]is complaint that a human resources employee did not assign individual claim numbers to two of his charges of discrimination or other complaint about the EEO process itself, cannot form the basis of a Title

VII or ADEA claim.), *aff'd*, 470 F. App'x 128 (4th Cir. 2012).[9] Notably, federal regulations require agencies to dismiss administrative complaints seeking relief based on "dissatisfaction with the processing of a previously filed complaint." 29 C.F.R. § 1614.107(a)(8); *see also Bolden v. Ashcroft*, 2005 WL 1903567, at *2 (D.D.C. July 15, 2005) ("Plaintiff's claims relating to the processing of his administrative claim before the EEOC must also be dismissed because plaintiff's dissatisfaction with the EEO administrative process does not provide the basis for either a separate EEO claim or a federal claim of discrimination.") (cleaned up).

Second, this claim fails because the alleged improper processing of Brown's administrative complaint does not constitute an adverse "personnel action" as statutorily defined. *See* 5 USC § 2302(a)(2). As the Fourth Circuit has held, only an "adverse employment action" that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" *Hoyle v. Freightliner*, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) is entitled to relief under the ADEA. Because an employee, or potential employee, who has been aggrieved, can proceed directly to a federal court on allegations of employment discrimination – pursuant to 29 USC § 633(a)(c), unsatisfactory administrative processing of such allegations is not considered an actionable adverse action. *See Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) ("[T]his Court has concluded that, because an agency's

---

[9] The Court owes no deference to either the ODNI's or the EEOC's underlying factual determinations and conclusions as it reviews the action *de novo*. *See Laber v. Harvey*, 438 F.3d 404, 424 (4th Cir. 2006) ("We hold that, when a federal employee comes to court to challenge, in whole or in part, the administrative disposition of his or her discrimination claims, the court must consider those claims *de novo*, and is not bound by the results of the administrative process"). It is for this reason that "any procedural errors by the agency's EEO office generally will have no impact on the *de novo* district court proceedings, unless the agency raises a defense that the plaintiff failed to exhaust administrative remedies." *Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016).

13

failure to issue a final decision on a plaintiff's EEO complaint within 60 days has no discernable negative consequences for plaintiff's employment, it is not an actionable adverse action."). "Even if the EEO Division botched the processing of h[is] complaint, [Plaintiff] is now already in a federal court on the merits, and any earlier mishandling is essentially moot." *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000). Accordingly, the Court dismisses **Count II**.

### C. Retaliation Claims

For Brown's final count, he alleges that "the agency retaliated and continues to retaliate against [him] by refusing communication and preventing consideration for further IC employment" and that although he had "sent the General Counsel a letter requesting a meeting to amicably try to settle the issue[,] [i]t has not been answered, even to acknowledge its receipt." Compl. at 21. Brown points to three particular events to bolster his retaliation claims: (1) Not receiving a response following an initial technical acceptance of his application for an advertised position of Vice-Chair of the National Intelligence Council during the summer of 2022; (2) losing access to a National Intelligence Council Association position on North Korea in December 2021 that he had held for several years prior to his complaint; and (3) being rejected for a professorial position at ODNI's university in November 2020. Compl. at 21.

Brown has failed to state a plausible claim of retaliation as to any of these claims. To sufficiently allege a claim for retaliation, a claimant must allege that he (1) "engaged in protected activity;" (2) the employer took "an adverse action" against him; and (3) there existed a "casual connection between the first two elements." *Shomo v. Napa Mgmt. Servs. Corp.*, 2022 WL 17477066, at *4 (E.D. Va. Dec. 6, 2022) (citation omitted). In the context of a retaliation claim, a plaintiff must allege "enough facts to show that a reasonable employee would have found the challenged action[s] materially adverse." *Id.* (citation omitted).

14

Brown not only fails to allege that any individuals responsible for the three instances he cites were aware of his protected activity, but further undermining the plausibility of his claims is the temporal gap between his protected activity and the alleged adverse actions. Using Brown's initiation of the administrative EEO process, dating back to September 2020, the temporal gaps at issue do not establish a plausible claim for retaliation. It is well-settled that "[a] lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Brown alleges that the retaliatory actions took place in November 2020, December 2021, and mid-summer of 2022. Compl. at 21. Therefore, these actions took place approximately two months, fifteen months, and twenty-two months consecutively, after Brown's alleged protected activity. The Fourth Circuit has held that "absent other evidence of a causal relationship, 'a lapse of two months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation.'" *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) (quoting *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005)).

Lastly, Brown acknowledges the existence of non-retaliatory reasons for two of the three instances he cites – for the NIC Association position on North Korea, Brown received an e-mail stating that "funding for the small project had [] ended" and for the professor position at ODNI, that the "job was cancelled." Compl. at 21. Regarding the failure to receive a response to a different job as the Vice-Chair of the National Intelligence Council, Brown alleges that although his "recission letter state[d] that [he] was free to apply to relevant ODNI positions . . . [he] was

15

ignored" *Id*., speculating that ODNI was acting out of retaliatory animus. Brown's own allegations undermine any reasonable inference of retaliation in favor of the non-retaliatory reasons offered.

Brown's retaliation claims based on his protected activity lack temporal proximity and most importantly, he acknowledges that the actions he complains of had legitimate reasons, rendering his claims implausible. Accordingly, the Court dismisses **Count III**.

## V.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss, Or, in the Alternative for Summary Judgment (ECF 19-20) is **GRANTED**; and it is further

**ORDERED** that the complaint is **DISMISSED**.

The Clerk is directed to close this civil action.

It is **SO ORDERED**.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
March 27, 2024